**Harvey Ray COCHRAN, Petitioner-Appellant,**

v.

**Willard NORVELL, Warden, etc., Respondent-Appellee.**

**No. 20937.**

United States Court of Appeals, Sixth Circuit.

Aug. 13, 1971.

G. Thomas Shields, Nashville, Tenn. (Court Appointed), for appellant.

R. Jackson Rose, Asst. Atty. Gen., Nashville, Tenn., David M. Pack, Atty. Gen., of counsel, for appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from the United States District Court for the Middle District of Tennessee, Nashville Division, of an order dismissing a petition for habeas corpus. This is the second time after Appellant was convicted and incarcerated in Tennessee in 1946 pursuant to a guilty plea on a charge of murder in the first degree that he has petitioned the federal courts with a writ of habeas corpus challenging the lawfulness of his state custody.

In May, 1964, the Appellant filed a petition of habeas corpus in the Western District of Tennessee in which he alleged that his custody in the hands of Tennessee authorities was in violation of several of his constitutional rights. Among those constitutional deprivations alleged were: (1) that he neither waived nor was given a preliminary hearing subsequent to his arrest; (2) that no indictment was presented to him or read to him; (3) that he was denied effective assistance of counsel because he did not see his counsel until the day of his trial; (4) that he did not enter the plea of guilty which is shown on the state court records; (5) that Appellant's counsel did not enter a plea of guilty for Appellant in Appellant's presence; (6) that Appellant was not present when he was sentenced by the state trial court, and (7) that Appellant was not permitted by his own counsel or the Court to speak on his own behalf although most anxious to do so.

In January, 1965, Appellant, who was represented by counsel, was granted a full and fair hearing on the issues he raised in his petition. Apart from statements by counsel and the Court, three witnesses—the Appellant, his brother and Mr. James R. Brown, who was one of two co-counsel for Appellant at his original trial—testified. The testimony of Mr. Brown is particularly damaging to most of the claimed constitutional infringements made by the Appellant. Also, the original warrant of Appellant's arrest, the Grand Jury indictment of Appellant and the final judgment against Appellant on the state jury's verdict, signed by the presiding trial judge, were duly received into evidence. Based upon the evidence presented, the District Court specifically found, among other things, that the Appellant was afforded competent counsel who effectively represented the Appellant at every stage of his state proceedings, that at all material times Appellant was present in the courtroom with his lawyers, that he was never denied the right and privilege of testifying or making a statement on his own behalf and that the plea of guilty entered on behalf of the Appellant was voluntarily made.

In October, 1969, four years later, Appellant filed a second petition for habeas corpus alleging that he was ineffectively represented by counsel, that his plea of guilty was involuntary, that the state trial record was so inadequate that he was being deprived of an opportunity to fair post-conviction review of his incarceration and that his guilty plea in 1946 was tainted by a false coerced confession which Tennessee authorities unlawfully extracted from him prior to his trial. The District Court accorded Appellant a second hearing at which much of the same evidence introduced at the first hearing was reintroduced. Based upon the evidence in the record, the District Court found "that petitioner has failed to establish the denial of his constitutional rights in the 1946 proceedings." We agree.

First, with regard to the alleged inadequacies of Appellant's original counsel, Appellant has not presented any new evidence which would support his factual contentions. At the hearing on Appellant's first petition for habeas corpus, Mr. Brown testified that he and Mr. Eggelston, as co-counsel, on several occasions met with and fully discussed the various alternatives open to the Appel-

lant with regard to the making of a guilty plea. He testified that included in their discussions was some consideration of what factors the Appellant should consider in choosing whether or not to repudiate his allegedly coerced confession and plead not guilty. We may fairly infer from the District Court's dismissal of the Appellant's first petition that the District Court at that hearing impliedly credited Mr. Brown's testimony in reaching its findings of fact. Pursuant to applicable statutory authority, 28 U.S.C. § 2244, and the record of this case, we can find no reason to upset the prior final determination of the District Court in Appellant's first petition that he was ably and effectively represented at his original trial.

■ Second, Appellant contends that he did not intelligently and voluntarily plead guilty, see Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), Kercheval v. United States, 274 U.S. 220, 223–224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927) and, that in any event, the State failed to make an "affirmative" showing in the trial court record of the voluntariness of Appellant's guilty plea, Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969). We find there is sufficient evidence in the record of the hearing on the first petition for habeas corpus, to justify the District Court's finding that the Appellant with an intelligent appreciation of his alternatives voluntarily entered a plea of guilty in the presence of and after being fully advised by counsel.

■ While the United States Supreme Court has not yet determined whether the "affirmative disclosure" requirement of Boykin v. Alabama is retroactive, Brady v. United States, supra, 397 U.S. at 747 n4, 90 S.Ct. 1463, we believe that the record as developed in the hearing on Appellant's first petition for habeas corpus satisfactorily demonstrates that, at the time of his plea, the Appellant had been fully informed "as to his rights on a plea of not guilty and as to the consequences of a plea of guilty." North Carolina v. Alford, 400 U.S. 25, 29 n3, 91

S.Ct. 160, 27 L.Ed.2d 162, 163 (1970). In that the record actually developed in post-conviction proceedings was fully adequate to deal with the substantive issues raised by the Appellant in his petitions for habeas corpus, we do not believe that the absence of a full state trial court record prejudiced Appellant's constitutional rights in any manner. Absent a specific holding by the United States Supreme Court that Boykin v. Alabama requires that all the circumstances surrounding a guilty plea must be in the original trial court record for cases decided prior to Boykin, we believe that a reviewing court may look to any relevant evidence in the record of the proceedings—including post-conviction proceedings—to determine the voluntariness of a guilty plea.

■ Finally, Appellant contends that his conviction should be set aside because his guilty plea was based upon a coerced and involuntary confession.

A review of the entire record in this case and of the available records from prior proceedings reveals the following fact: On August 3, 1946, Appellant's wife was found dead, shot through the forehead while she lay in her bed, under circumstances which suggested she might have been a victim of suicide. On August 9, 1946, Appellant was arrested pursuant to a warrant after the police had been supplied certain leads by the decedent's brother. On the evening of August 9, Appellant was subjected to six hours of intense questioning which resulted in the Appellant breaking down under the alleged pressure of the questioning and confessing that he had in fact murdered his wife on the evening of August 3rd. On August 12, 1946, the Appellant was brought before a Grand Jury, which returned an indictment against him charging him with murder in the first degree.

According to one of Appellant's original co-counsel, Mr. James R. Brown, at or about the time of the indictment, Appellant and his two counsel discussed the circumstances surrounding the extraction of his confession. His counsel ob-

served that the Appellant was very frightened of the death penalty. His counsel purportedly advised him to plead not guilty and attack the confession if it did not reveal the true facts of the case. Mr. Brown testified, "we left the proposition open to him and told him that he knew the facts, that we didn't. And he elected to plead guilty and accept the recommendation of the Attorney General [for a ninety-nine year sentence]." Transcript of January 29, 1965 at 108.

On August 16, 1946, Appellant pled guilty to a charge of murder in the first degree and was convicted and sentenced to the penitentiary for a term of ninety-nine years. During his brief trial, evidence of the confession was introduced against the Appellant to prove certain elements of the crime had actually occurred. In dismissing Appellant's first petition for habeas corpus, the District Court did not make factual findings concerning the allegedly unlawful character of Appellant's confession and its purported tainting of Appellant's guilty plea.

Recently, the United States Supreme Court has set out with some particularity guidelines for determining the voluntariness of a guilty plea when the accused has purportedly been coerced by law enforcement officials into confessing to the crime with which he has been charged. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

In McMann v. Richardson, *supra*, the United States Supreme Court affirmed a District Court's denial, without an evidentiary hearing, of several petitions for habeas corpus where the petitioners had pled guilty to felonies, after advice by competent counsel, and thereafter contended that their guilty pleas were the illegal product of coerced confessions. In so holding, the Court stated:

"For present purposes, we put aside those cases where the defendant has his own reasons for pleading guilty wholly aside from the strength of the case against him as well as those cases where the defendant, although he would have gone to trial had he thought the State could not prove its case, is motivated by evidence against him independent of the confession. In these cases, as the Court of Appeals recognized, the confession, even if coerced, is not a sufficient factor in the plea to justify relief. Neither do we have before us the uncounseled defendant, see Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956), nor the situation where the circumstances that coerced the confession have abiding impact and also taint the plea. Cf. Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940). It is not disputed that in such cases a guilty plea is properly open to challenge.

The issue on which we differ with the Court of Appeals arises in those situations involving the counseled defendant who allegedly would put the State to its proof if there was a substantial enough chance of acquittal, who would do so except for a prior confession that might be offered against him, and who because of the confession decides to plead guilty to save himself the expense and agony of a trial and perhaps also to minimize the penalty that might be imposed. After conviction on such a plea, is a defendant entitled to a hearing, and to relief if his factual claims are accepted, when his petition for habeas corpus alleges that his confession was in fact coerced and that it motivated his plea? We think not if he alleges and proves no more than this. 397 U.S. at 767–768, 90 S.Ct. at 1446.

And in Parker v. North Carolina, *supra*, the Court further clarified its rationale in McMann v. Richardson by stating that a guilty plea is not the product of a coerced confession where the alleged unlawful conduct of the police was not of such an "enduring effect as to make invountary a plea of guilty entered over a month later." The Court stated:

"After the allegedly coercive interrogation, there were no threats, mis-

representations, promises, or other improper acts by the State. Parker had the advice of retained counsel and of his family for the month before he pleaded. The connection, if any, between Parker's confession and his plea of guilty had 'become so attenuated as to dissipate the taint.' Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939) Wong Sun v. United States, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)." 397 U.S. at 796, 90 S.Ct. at 1462.

■ Based upon the McMann v. Richardson and Parker v. North Carolina decisions, the Appellant is only entitled to relief on his claim that his guilty plea is a product of an unlawful confession if he can demonstrate that "the circumstances that coerced the confession have abiding impact and also taint the plea. *Cf.* Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940)." McMann v. Richardson, *supra*, 397 U.S. at 767, 90 S.Ct. at 1447. Moreover, Appellant's burden is increased where, as here, it has been shown that the possible "enduring effect" of any unlawful coercion has been attenuated by the intervening presence and advice of counsel and family members [1] between the time of the making of the allegedly unlawful confession and the time of the making of the plea. Parker v. North Carolina, *supra*, 397 U.S. at 796, 90 S.Ct. 1458.

In Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940), where the United States Supreme Court considered the voluntariness of confessions after guilty pleas, the petitioners had been allegedly subjected to a shocking five day period of interrogations culminating in an all night session in which numerous brutalities were alleged. Thereafter, when the petitioners in *Chambers* were taken to court for their indictment, the Sheriff informed them that he would hand the keys to their cell over to a lynching crowd if they retracted their confessions. And nearly one month later, as the petitioners in *Chambers* were tried and convicted, the person alleged to have inflicted torture upon them during their interrogations purportedly informed them they would be killed if they did not stick to their prior confessions. Chambers v. Florida, 113 Fla. 786, 152 So. 437, 438 (1934).

The facts of the instant case do not demonstrate that the Appellant has been subjected to continuous pressure in confinement; exclusion of counsel, family or friends; or the making of threats, misrepresentations or promises by the State.

Based upon these facts, we hold that the District Court did not err in finding that the circumstances surrounding and subsequent to Appellant's allegedly coerced confession did not taint Appellant's plea of guilty.

The judgment of the District Court, dismissing the Appellant's petition of habeas corpus, is hereby affirmed.

■

---

[1] Appellant's brother, Larry Cochran, testified that while the Appellant was being held in Centerville jail, prior to his plea of guilty, he was permitted to visit the Appellant. Transcript of January 29, 1965, at 84.