Robert LONBERGER,
Petitioner–Appellant,

v.

Arnold R. JAGO, Superintendent, Southern Ohio Correctional Facility,
Respondent–Appellee.

No. 79–3100.

United States Court of Appeals,
Sixth Circuit.

Argued April 3, 1980.

Decided Dec. 1, 1980.

Norman G. Zemmelman, Britz & Zemmelman, Toledo, Ohio (Court–appointed), John Czarnecki, Haywood, Cooper, Straub, Walinski & Cramer Co., L.P.A., Toledo, Ohio (Court–appointed), for petitioner–appellant.

William J. Brown, Atty. Gen. of Ohio, Randall G. Burnworth, Asst. Atty. Gen., Columbus, Ohio, for respondent–appellee.

Before LIVELY and BROWN, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This is an appeal from an order of the United States District Court for the Northern District of Ohio, Western Division, dismissing petitioner's Motion for a Writ of Habeas Corpus. Petitioner, Robert Lonberger, is an Ohio prisoner who was convicted by a jury of aggravated murder with a "specification," which resulted in the death penalty under Ohio's sentencing enhancement statute. Subsequently, the Ohio

Court of Appeals reversed the conviction of aggravated murder, and reduced the verdict to the lesser included offense of murder. On remand, the trial court sentenced the defendant to fifteen years to life imprisonment.

Petitioner challenges the constitutionality of his Ohio conviction, and we here consider (1) whether it was error for the trial court to allow evidence of a prior conviction of attempted murder to go to the jury at the same time that the jury was deciding petitioner's guilt or innocence on the substantive charge; and (2) whether the district court erred in holding that petitioner's guilty plea to a charge of attempted murder, the basis of the "specification," was knowingly and voluntarily made.

1. O.R.C. § 2903.01 reads:

(A) No person shall purposely, and with prior calculation and design, cause the death of another.

(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.

(C) Whoever violates this section is guilty of aggravated murder, and shall be punished as provided in section 2929.02 of the Revised Code.

2. O.R.C. § 2929.02 provides, in pertinent part:

(A) Whoever is convicted of aggravated murder in violation of section 2903.01 of the Revised Code shall suffer death or be imprisoned for life, as determined pursuant to sections 2929.03 and 2929.04 of the Revised Code. In addition, the offender may be fined an amount fixed by the court, but not more than twenty–five thousand dollars.

3. O.R.C. § 2929.03 provides:

(A) If the indictment or count in the indictment charging aggravated murder contains no specification of an aggravating circumstance listed in division (A) of section 2929.-04 of the Revised Code, then, following a verdict of guilty of the charge, the trial court shall impose sentence of life imprisonment on the offender.

(B) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, the verdict shall separately state whether the accused is found

## I.

Petitioner was indicted by the Lucas County, Ohio, Grand Jury and charged with murder while committing rape, defined by § 2903.01(B), Ohio Rev.Code, as "aggravated murder." [1] The indictment further contained a "specification" that petitioner had been previously convicted of attempted murder. The Ohio statutes under which petitioner was tried provided for life imprisonment upon conviction of aggravated murder unless, in addition to the principal offense, one of seven "specifications" listed in O.R.C. § 2929.04 was charged and proved at trial, in which case the defendant could be sentenced to death. O.R.C. § 2929.02 [2] and 2929.03 [3]. A prior conviction of attempted

guilty or not guilty of the principal charge and, if guilty of the principal charge, whether the offender is guilty or not guilty of each specification. The jury shall be instructed on its duties in this regard, which shall include an instruction that a specification must be proved beyond a reasonable doubt in order to support a guilty verdict on such specification, but such instruction shall not mention the penalty which may be the consequence of a guilty or not guilty verdict on any charge or specification.

(C) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge but not guilty of each of the specifications, the trial court shall impose sentence of life imprisonment on the offender. If the indictment contains one or more specifications listed in division (A) of such section, then following a verdict of guilty of both the charge and one or more of the specifications, the penalty to be imposed on the offender shall be determined:

(1) By the panel of three judges which tried the offender upon his waiver of the right to trial by jury;

(2) By the trial judge, if the offender was tried by jury.

(D) When death may be imposed as a penalty for aggravated murder, the court shall require a pre–sentence investigation and a psychiatric examination to be made, and reports submitted to the court pursuant to section 2947.06 of the Revised Code. Copies of the reports shall be furnished to the prosecutor and to the offender or his counsel. The court shall hear testimony and other evi-

murder was one of the "specifications" prescribed by the statute. O.R.C. § 2929.-04(A)(5).[4]

The evidence adduced at trial on the principal charge revealed that on the night of January 29, 1975, Charita Lanier was brutally murdered. The cause of death was exsanguination resulting from a severe laceration of the neck. A bloodstained and bent twelve–inch knife belonging to the victim was found at the scene and identified as the probable murder weapon. An autopsy performed the following morning revealed the presence of sperm in the vaginal canal. No bruises or external signs of trauma were found with the exception of the fatal laceration of the neck. The State also offered testimony that the petitioner was with the victim in her home the night of her death, and introduced into evidence blood–spotted clothing belonging to the defendant.

The state sought to prove the specification of a prior conviction in addition to proving the substantive charge. To this end, the state introduced into evidence a conviction statement, with the indictment appended, from Cook County, Illinois. These documents indicated that a Robert Lonberger had been convicted of attempted murder in 1972.

Petitioner's pre–trial motion to dismiss the specification on the ground that his 1972 guilty plea to attempted murder had not been knowingly and voluntarily made

was rejected by the trial court. The prosecutor and the trial court also rejected appellant's offer to stipulate to having committed the prior offense (the stipulation would have kept from the jury the details of the prior offense, including the fact that it too involved an attack upon a woman with a knife). The admission into evidence of the conviction statement was accompanied by an instruction to the jury that it was not to consider the prior conviction in determining the defendant's guilt or innocence on the substantive charge.

On May 30, 1975, a jury returned a verdict of guilty against the petitioner on the charge of aggravated murder, and it further found him guilty of the specification. Petitioner appealed to the Ohio Court of Appeals, which reversed the verdict of guilty of aggravated murder on the grounds that the State had failed to establish the elements of rape or the identity of the appellant as the offender beyond a reasonable doubt. The Ohio appeals court reduced the verdict to the lesser included offense of murder and remanded the case for sentencing, whereupon defendant was sentenced to fifteen years to life. After exhausting his state court remedies, appellant petitioned the district court for a writ of habeas corpus, which was denied.

## II.

Petitioner first charges that the evidence of his prior conviction was not admissible

---

dence, the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, relevant to the penalty which should be imposed on the offender. If the offender chooses to make a statement, he is subject to cross–examination only if he consents to make such statement under oath or affirmation.

(E) Upon consideration of the reports, testimony, other evidence, statement of the offender, and arguments of counsel submitted to the court pursuant to division (D) of this section, if the court finds, or if the panel of three judges unanimously finds that none of the mitigating circumstances listed in division (B) of section 2929.04 of the Revised Code is established by a preponderance of the evidence, it shall impose sentence of death on the offender. Otherwise, it shall

impose sentence of life imprisonment on the offender.

4. O.R.C. § 2929.04 provides, in pertinent part:

(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code, and is proved beyond a reasonable doubt:

\* \* \* \* \* \*

(5) The offender has previously been convicted of an offense of which the gist was the purposeful killing of or attempt to kill another, committed prior to the offense at bar, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.

under Ohio law. Alternatively, he argues that a one–stage trial at which evidence of a prior conviction is introduced solely on the issue of punishment violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Petitioner argues that he is entitled, therefore, to a bifurcated trial at which a jury must pass upon the principal offense charged prior to the introduction of any evidence of his previous conviction, which only goes to prove the specification.

With regard to Ohio law, the Ohio Supreme Court rejected the identical argument in *State v. Gordon*, 28 Ohio St.2d 45, 276 N.E.2d 243 (1971). There the court held that where it is necessary to charge a prior offense in the indictment for purposes of enhanced punishment, as a matter of state law the prior offense becomes an element of the second offense, and, therefore, "[i]t is not reversible error to read to the jury an indictment which contains the averment of a prior conviction or to place such indictment in the jury's possession during its deliberations [in a single–stage trial] . . . ."

■ The Ohio legislature has explicitly required that the specification charged here be alleged in the indictment.[5] We conclude, therefore, on the authority of *State v. Gordon*, that the admission of petitioner's prior conviction in a single–stage trial conformed with Ohio's rules of evidence and criminal procedure.

Petitioner's constitutional attack on Ohio's procedure is adequately answered by the *Spencer v. Texas*, 385 U.S. 544, 87 S.Ct. 48, 17 L.Ed.2d 606 (1967), decision and its progeny. In *Spencer v. Texas* the Supreme Court declined to hold that the Texas proce-dure of enforcing its recidivist statutes, a procedure identical to that utilized by Ohio in the instant case, violated the due process clause of the Fourteenth Amendment. The Court there recognized the inherent prejudice of prior crimes evidence, but reasoned that a defendant's interest in avoiding such prejudice is outweighed by the state's interest in trying all the issues in a one–stage trial. Following the *Spencer v. Texas* decision, we stated: "[C]ombining in one indictment charges of prior offenses together with the immediate charges, reading the entire indictment to the jury and offering proof of such earlier offenses, all before submitting the case to the jury, [is] not a state practice offensive to the proscriptions of the Fourteenth Amendment." *Haggard v. Henderson*, 382 F.2d 288, 289 (6th Cir. 1967). *See also Evans v. Cowan*, 506 F.2d 1248 (6th Cir 1974); *Wilson v. Wiman*, 386 F.2d 968 (6th Cir. 1967).

Appellant's attempts to distinguish *Spencer v. Texas* are not persuasive. He argues, for example, that the *Spencer* court noted in its opinion that the prior convictions in Texas were made an element of the principal crime under the Texas habitual criminal statutes. Thus, he continues, the legitimate state purpose in introducing evidence of prior crimes in *Spencer*–type cases is absent here, where the penalty provisions are separate and distinct from the substantive offense. The distinction drawn by petitioner is nowhere to be found in *Spencer*. To the contrary, the Texas recidivist statutes at issue in *Spencer* are very similar to the enhanced punishment statute at issue here.[6] Each of the statutes is concerned solely with the enhancement of punishment; none expressly make a prior conviction an element of a substantive offense.

5. See Footnote 4, *supra*.

6. The recidivist statutes involved in *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), were Articles 62, 63, and 64 of the Vernon's Ann. Texas Pen. Code (1952).

   Article 62 provides: If it be shown on the trial of a felony less than capital that the defendant has been before convicted of the same offense, or one of the same nature, the punishment on such second or other subsequent conviction shall be the highest which is affixed to the commission of such offenses in ordinary cases.

   Article 63 provides: Whoever shall have been three times convicted of a felony less than capital shall on such third conviction be imprisoned for life in the penitentiary.

   Article 64 provides: A person convicted a second time of any offense to which the penalty of death is affixed as an alternate punishment shall not receive on such second conviction a less punishment than imprisonment for life in the penitentiary.

Appellant would fare no better were we to accept his proposed distinction. For the Ohio Supreme Court has held that a prior conviction is a factual element of the substantive crime to be proved where the prior offense has been charged in the indictment under Ohio's enhanced punishment statutes. *State v. Gordon*, 28 Ohio St.2d 45, 276 N.E.2d 243 (1971).

■ Petitioner further argues that the evidence of his previous conviction was particularly inflammatory, an allegation conspicuously absent in *Spencer v. Texas*. Here the jury was given a copy of the indictment accompanying petitioner's conviction statement. The indictment charged that the defendant "attempted to kill Dorothy Maxwell by cutting Dorothy Maxwell with a knife." Thus, the jury was apprised of the fact that the defendant had previously attempted to murder a woman with a knife, a crime strikingly similar to the one for which he was on trial. In *Haggard v. Henderson*, 382 F.2d 288 (6th Cir. 1967), a Tennessee defendant was found guilty of burglary and larceny in a case in which the prosecution introduced evidence of eight prior convictions for offenses ranging from larceny to attempted murder. The eight prior offenses were offered under the auspices of Tennessee's habitual criminal statute, which required only three prior convictions to be proved. We reversed the district court's grant of a writ of habeas corpus, despite the potential for inflaming the jury by the overkill techniques employed by the state, holding that *Spencer v. Texas* was not "critically distinguish[able]." 382 F.2d at 290. One judge noted that absent the *Spencer* decision, he would have voted to affirm the district court. *Id.* (Edwards, J., concurring). Were we writing on a clean slate, we might vote to reverse the conviction at bar due to the inflammatory nature of the prior crime evidence, especially in light of petitioner's offer to stipulate to the previous offense. We are constrained to hold, however, that no violation of defendant's right to due process occurred in view of *Spencer v. Texas* and our decision in *Haggard v. Henderson*.

Appellant also asserts, without elaboration, that the single–stage trial procedure used in Ohio denied him his Fifth Amendment privilege against self–incrimination, and "chilled" his Sixth Amendment right to a jury trial. The former contention was considered and rejected by the Supreme Court in *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), and requires no further comment. Petitioner's Sixth Amendment argument is that prior crimes evidence may be so prejudicial that a defendant is forced to explore the possibility of pleading guilty to a lesser offense in order to avoid a jury trial and the attendant possible death sentence. The argument assumes that limiting instructions are incapable of mitigating the impact of the disclosure to the jury of the prior conviction. "To say the United States Constitution is infringed simply because this type of evidence may be prejudicial and limiting instructions inadequate to vitiate prejudicial effects, would make inroads into this entire complex code of state criminal evidentiary law, and would threaten other large areas of trial jurisprudence." *Spencer v. Texas, supra*, 385 U.S. at 562, 87 S.Ct. 652. The Court there went on to say: "This type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function." *Id.*

Petitioner's challenge to Ohio's single–stage procedure is without merit.

### III.

We next address the issue of whether petitioner's prior conviction was inadmissible because his plea of guilty was involuntary.

■ An invalid conviction may not be used to enhance sentencing. *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). An involuntary plea of guilty renders a conviction based thereon constitutionally invalid. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A guilty plea will be deemed involuntary unless there is a showing that it was

intelligently and knowingly entered–an issue governed by federal standards. *Id.*

In the instant case, the State offered, as proof of the voluntariness of petitioner's 1972 plea of guilty to attempted murder in Cook County, Illinois, a conviction statement, and a transcript of the plea's acceptance.

The conviction statement avers that records of the circuit court of Cook County, Illinois, show that a Robert Lonberger was indicted and charged with "AGGRAVATED BATTERY, ETC." That document further states that after initially pleading not guilty, Lonberger withdrew his plea, offered to plead guilty, and his offer was accepted after the trial judge explained the consequence of a guilty plea to the defendant. Petitioner stipulated at trial that he was the Robert Lonberger named in the conviction statement.

The indictment was composed of four charges: three counts of "aggravated battery" and one count of "attempt." With the exception of one of the aggravated battery charges, all of the offenses charged in the indictment were committed against one Dorothy Maxwell, and occurred on the same date. That part of the indictment charging the offense of "attempt" specified that a Robert Lonberger "with intent to commit the offense of murder, intentionally and knowingly attempted to kill Dorothy Maxwell with a knife." Notwithstanding the conviction statement's averment that the trial judge explained the consequences of a guilty plea to the defendant, at no time during the hearing at which the guilty plea was entered were the words "murder" or "attempted murder" mentioned by anyone. The transcript of the 1972 Chicago hearing reveals that the following colloquy took place following a conference among the trial judge, the prosecutor and Lonberger's counsel:

> The Court: In other words, you are pleading guilty, that you did on August 25, 1968, commit the offense of aggravated battery on one Dorothy Maxwell, and that you did on the same date attempt on Dorothy Maxwell, with a knife, is that correct?

■ The Constitution requires, at a minimum, that there be an affirmative showing that a plea of guilty was intelligent and knowing before it is accepted by the trial judge. *Boykin v. Alabama, supra,* at 242, 89 S.Ct. at 1711.

In *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed. 108 (1976), the Supreme Court, holding that a defendant must receive "real notice of the true charges against him," observed:

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protection that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.

426 U.S. at 645, 96 S.Ct. at 2257.

■ In view of the trial judge's failure to apprise the petitioner at any time that he was pleading guilty to attempted murder, and it nowhere affirmatively appearing in the transcript that the petitioner was aware that his plea was to the charge of attempted murder, we are compelled to conclude that the transcript on its face is inadequate to show that the defendant understood the charge to which he was pleading.

In *Roddy v. Black,* 516 F.2d 1380 (6th Cir. 1975), we held that "[I]n the face of an inadequate transcript at the time of a guilty plea's acceptance, the state must make a clear and convincing showing that the plea was in fact knowingly and understandably entered." Moreover, the state is not relieved of this duty where the conviction being attacked arose in another jurisdiction. *Craig v. Beto,* 458 F.2d 1131 (5th Cir. 1972); *U. S. ex rel. Savini v. Jackson,* 250 F.2d 349 (2d Cir. 1957).

In *Roddy v. Black, supra,* a case decided prior to *Henderson, supra,* we refused to find a conviction invalid where the tran-

script disclosed that the judge who accepted the petitioner's plea of guilty to assault and battery and immoral and indecent practices made reference only to a charge of "A&B" during the proceeding. Unlike the present case, however, in *Roddy* the state introduced testimony of the petitioner's counsel, the prosecutor, and testimony of the judge who accepted the plea to the effect that the defendant "in fact knew the nature of the charges to which he was pleading guilty." 516 F.2d at 1385. No such evidence was presented at petitioner's pretrial hearing in the present case. In fact, the only extrinsic evidence was the testimony of petitioner. He testified that he had not been apprised of the nature of the charges against him in the 1972 Chicago conviction. He stated that his attorney had told him that he was "copping out to aggravated battery." Petitioner further testified that he never personally received or read the indictment.

In the instant case, the state produced no evidence that petitioner received or read the 1972 indictment charging him with attempted murder. The state introduced no evidence that petitioner's counsel or the court explained that he was charged with attempted murder. Finally, the transcript is inadequate to show that petitioner understood that he was pleading guilty to attempted murder. We hold, therefore, that the state failed to meet its burden to show by clear and convincing evidence that the defendant understood the nature of the charge against him.

We find it unnecessary to decide the additional issues raised by the petitioner in this appeal in view of our holding today that his Ohio conviction was unconstitutional.

The district court is reversed. We remand the case to the district court with directions to issue a writ of habeas corpus unless the State of Ohio grants petitioner a new trial within a reasonable time to be determined by the district court.